UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

J & J SPORTS PRODUCTIONS, INC.,                  :
as Broadcast Licensee of the May 6, 2006
DELAHOYA/MAYORGA Program,                        :      **REPORT AND**
                                                        **RECOMMENDATION**
                        Plaintiff,               :      **TO THE HONORABLE**
                                                        **BARBARA S. JONES**
        -against-                                :
                                                        06 Civ. 13022 (BSJ)(FM)
BLAKE A. KAMAL, Individually and as              :
officer, director, shareholder and/or principal
of LEVELS EAST UNISEX, INC. d/b/a                :
LEVELS EAST UNISEX, et ano,                      

                                                 :
                        Defendants.              
                                                 :

-----------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

        In this action, plaintiff J & J Sports Productions, Inc. ("J & J") alleges that

defendant Levels East Unisex, Inc. ("Levels East"), and its principal, defendant Blake

Kamal (together, the "defendants"), illegally intercepted J & J's scrambled satellite signal

of a boxing match between De La Hoya and Mayorga ("Program") in order to show the

Program to Levels East patrons on May 6, 2006.  J & J contends that, through these

activities, the defendants violated the Cable Communications Policy Act, as amended

("Communications Act"), 47 U.S.C. §§ 553(a)(1), 605(a), 605(e)(4).

Following the defendants' failure to respond to the complaint, Your Honor entered a default judgment and referred the matter to me for an inquest. (Docket No. 14). Thereafter, by order dated September 26, 2007, I directed J & J to submit its inquest papers by November 30, 2007. (Docket No. 15). The order further directed the defendants to respond by December 14, 2007. (Id.). Although J & J's papers were timely filed, the defendants did not submit any opposition papers.

For the reasons set forth below, I conclude, on the basis of J & J's uncontradicted papers, that J & J should be awarded judgment against the defendants in the amount of $3,350, consisting of $3,000 in statutory damages and $350 in costs.

II.    Standard of Review

In light of the defendants' default, J & J's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages on the claim, see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty,

the basis for the damages specified in the default judgment.  See Transatlantic Marine

Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).

III.    Facts

The unrefuted allegations of J & J's complaint, together with its inquest

papers, establish as follows:

J & J entered into a contract which gave it the exclusive right to distribute

the Program via closed circuit television and encrypted satellite signal.  (Compl. ¶ 15).

J & J, in turn, entered into contracts with commercial establishments allowing them to

show the Program to their patrons.  (Id. ¶ 17; Aff. of Joseph Gagliardi, sworn to on Mar.

8, 2007 ("Gagliardi Aff."), ¶¶ 3, 5 & Ex. B).  The Program originated via a satellite

uplink and was retransmitted via satellite or microwave to cable and satellite systems.

(Compl. ¶ 15).  Levels East was not an entity authorized to receive the Program.

(Gagliardi Aff. ¶ 8).

At approximately 10 p.m. on May 6, 2006, J & J's auditor, Allan DeLeon,

entered Levels East.  (See Aff. of Allan DeLeon, sworn to on June 20, 2006 ("DeLeon

Aff."), at 1).  There he observed six persons watching the sixth round of an "undercard"

fight between boxers named Jauregui and Guzman.[1]  (Id. at 1-2).  Although DeLeon's

affidavit does not identify the main event that night, it seems clear that the

Jauregui/Guzman bout preceded the De La Hoya/Mayorga bout as part of the same

---

[1]     DeLeon apparently states incorrectly in his affidavit that the fighter opposing
Guzman was "Chatito."  (Compare DeLeon Aff. at 1, with Steve Springer, De La Hoya Can Still
Fight the Good Fight, L.A. Times, May 7, 2006, § D, at 1).

Program.  See, e.g., Michael Hirsley, <u>De La Hoya's Big Obstacles: Mayorga, Rust;</u>

<u>Guzman (25-0) Easily Takes out Jauregui</u>, Chi. Trib., May 7, 2006, § C, at 9.

IV.    <u>Discussion</u>

    A.    <u>Statutory Damages</u>

       Sections 553[2] and 605[3] of Title 47 of the United States Code prohibit the

unauthorized interception and reception of cable programming services.  <u>Barnes</u>, 13 F.

Supp. 2d at 547-48 (citing <u>Int'l Cablevision, Inc. v. Sykes</u>, 75 F.3d 123, 133 (2d Cir.

1996)); <u>Cablevision Sys. N.Y.C. Corp. v. Lokshin</u>, 980 F. Supp. 107, 112 (E.D.N.Y.

1997) ("In contrast to [S]ection 553, which by its statutory language applies only to

transmissions via cable systems, [S]ection 605(a) applies to 'the interception of cable-

borne, as well as over-the-air, pay television' where cable-borne transmissions originate

as satellite transmissions . . . .  Thus, when pay television programming is transmitted

over both cable and satellite mediums, both statutes apply.") (quoting <u>Sykes</u>, 75 F.3d at

130).

       When a court determines that a defendant's conduct has violated both

Sections 553 and 605 of the Communications Act, a plaintiff may recover damages under

only one of those sections.  <u>Barnes</u>, 13 F. Supp. 2d at 548; <u>see</u> <u>Sykes</u>, 75 F.3d at 127.  An

---

     [2]    47 U.S.C. § 553(a)(1) provides, in pertinent part, that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."

     [3]    47 U.S.C. § 605(a) provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person."

aggrieved cable operator may, however, elect to recover damages under Section 605 in consideration of its higher damages award. Barnes, 13 F. Supp. 2d at 548 (citing Sykes).

Here, the defendants' interception of J & J's signal for the Program clearly violated Section 605(a). Furthermore, J & J possessed "proprietary rights" in the communications that the defendants intercepted without authorization, and therefore is a "person aggrieved" within the meaning of 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A).

Section 605(e)(3)(C)(i)(II) of Title 47 of the United States Code allows the award of statutory damages for "each violation of subsection (a) . . . in a sum not less than $1,000 or more than $10,000, as the court considers just." Additionally, if a court finds that the statute was violated "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, in its discretion, award an additional sum up to $100,000. Id. § 605(e)(3)(C)(ii). J & J seeks to recover the maximum statutory damages of $10,000, in addition to enhanced damages for willfulness in the amount of $100,000, for a total of $110,000. (See Compl. ¶ 23).

"The amount of damages to be awarded pursuant to Section 605 rests with the sound discretion of the court." Entm't by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 Civ. 3945 (RR)(SMG), 2002 WL 2022522, at *3 (E.D.N.Y. May 21, 2002). Because the statute provides little guidance on how damages should be assessed, some courts have calculated statutory damages based on the number of patrons in the establishment at the time of the violation. See, e.g., Entm't by J & J, Inc., v. Friends II, Inc., No. 02 Civ. 585 (JES)(RLE), 2003 WL 1990414, at *3 (S.D.N.Y. Apr. 25, 2003)

(awarding $20 per patron based on sub-licensing fee per potential patron); Entm't by J & J, Inc. v. Nina's Rest. & Catering, No. 01 Civ. 5483 (KMW)(RLE), 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (awarding $20 per patron); Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) (awarding $50 per patron). Other courts have simply imposed damages in a flat amount without an explanation. See, e.g., Entm't by J & J, Inc. v. Suriel, No. 01 Civ. 11460 (RO), 2003 WL 1090268, at *1 (S.D.N.Y. Mar. 11, 2003) (awarding $11,000); King Vision Pay-Per-View Corp., Ltd. v. Papacito Lidia Luncheonette, Inc., No. 01 Civ. 7575 (LAK)(AJP), 2001 WL 1558269, at *2 (S.D.N.Y. Dec. 6, 2001) (awarding $20,000 in total damages).

In prior cases I have opted to calculate damages on a per patron basis. See, e.g., J & J Sports Prods., Inc. v. Foxe, No. 06 Civ. 1702 (LAP)(FM), 2007 WL 1686688, at *3 (S.D.N.Y. May 29, 2007); Kingvision Pay-Per-View Ltd. v. Cardona, No. 03 Civ. 3839 (GBD)(FM), 2004 WL 1490224, at *3 (S.D.N.Y. June 30, 2004); Time Warner Cable of N.Y.C. v. Sanchez, No. 02 Civ. 5855 (GBD)(FM), 2003 WL 21744089, at *4 (S.D.N.Y. July 8, 2003). For example, in Foxe, because there were nine patrons viewing a boxing match, I calculated the plaintiff's actual damages as $494.55 (9 x $54.95), plus the $1,000 that it would have cost the defendants to purchase the program. Foxe, 2007 WL 1686688, at *3. I also recommended that the plaintiff be awarded an additional $3,000 for the defendants' willfulness. Id. In Cardona, I noted that the fee that the defendant bar had to pay to display a fight was not the full extent of the plaintiff's damages because its customers might have had to subscribe to the cable company's

-6-

service, or enhance their viewing level, to watch the program had the bar not stolen the signal. Cardona, 2004 WL 1490224, at *3.

In this case, the auditor counted six patrons, each of whom might have had to pay $54.95 to view the Program. (Gagliardi Aff. ¶ 9B). J & J has failed to indicate, however, what it would have charged Levels East to purchase the Program. Therefore, because the Court cannot speculate as to the proper commercial rate, the only damage that J & J has actually established is the $329.70 (6 x $54.95) that the patrons would have had to pay to view the Program at home.

J & J argues that the Court should award the statutory maximum of $10,000 as actual damages because of the defendants' willful conduct. Indeed, in its memorandum of law, J & J argues that an award of up to $100,000 would be justified because the "Defendant is a repeat violator of the Federal Communications Law." (Pl.'s Mem. at 7). However, there is not a shred of evidence to establish this contention. Moreover, as in Foxe, two facts distinguish this case from many other theft-of-cable cases. First, the auditor's affidavit makes clear that the defendants were not charging admission. Second, the venue was a hair salon with only one fifteen-inch television set, not a bar or restaurant which could expect substantially increased sales as a result of an open door policy. Accordingly, I recommend that J & J's damages be fixed in the amount of $1,000, the statutory minimum under Section 605(e)(3)(c)(i)(II).

In addition, because the defendants' conduct clearly was willful and undertaken for private financial gain, J & J is entitled to enhanced damages. I

consequently recommend that J & J be awarded an additional $2,000 "to send the message that cable piracy will not be tolerated." See Foxe, 2007 WL 1686688, at *3 (awarding double the statutory damages for willfulness). The total statutory damages award I recommend is therefore $3,000.

B.    Costs and Attorney's Fees

Section 605 authorizes a court to "direct the recovery of full costs, including the award of reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). In addition, a party may seek reimbursement for the cost of deposition and trial transcripts, service of process fees, witness fees and mileage, interpreting fees, and certain small photographs. See 28 U.S.C. § 1920; Fed. R. Civ. P. 54; Local Civ. R. 54.1.

Second Circuit precedent requires a party seeking an award of attorney's fees to support that request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). Fee applications that do not contain such supporting data "should normally be disallowed." Id. at 1154; see also Kingvision Pay-Per-View, Ltd. v. The Body Shop, No. 00 Civ. 1089 (LTS), 2002 WL 393091, at *5 (S.D.N.Y. Mar. 13, 2002) (denying attorney's fees because, even though requested amount of $1,000 was reasonable, detailed documentation was not provided).

J & J alleges that it incurred attorney's fees and costs in the amount of $671.37. (See Pl.'s Mem. at 9).[4] No matter how reasonable this amount may be, J & J has failed to support its request with any documentation. Accordingly, as in prior cases, I recommend that the Court disallow any award of attorney's fees for failure to comply with the requirements of Carey. See, e.g., Cablevision Sys. N.Y.C. Corp. v. Diaz, No. 01 Civ. 4340 (GEL)(FM), 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002). However, the Court can take judicial notice of the fact that the filing fee was $350 when this action commenced and award costs in that amount. See 28 U.S.C. § 1914(a); Local Civ. R. 54.1.

## V.     Conclusion

For the reasons set forth above, J & J should be awarded judgment against the defendants in the amount of $3,350, consisting of $3,000 in statutory damages and $350 in costs.

## VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the

---

[4]      The memorandum of law submitted by J & J's counsel does not contain page numbers. The "Fees and Costs" section of the memorandum also incorrectly identifies the plaintiff as the "Garden City Boxing Club." (Pl.'s Mem. at 8).

Honorable Barbara S. Jones, United States District Judge, and to the chambers of the

undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York,

10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e),

72(b).

Dated:     New York, New York
           December 19, 2007

 

_____
FRANK MAAS
United States Magistrate Judge


Copies to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
Fax: (845) 647-6277

Blake Kamal
464 126th Street, Apt. 3A
New York, New York 10027-2512

Levels East Unisex, Inc.
2284 Second Avenue
New York, New York 10035-4860